DILLON McCANDLESS KING COULTER & GRAHAM, LLP, Thomas W. King, III, Esquire, and Michael T. Rupert, Appellees

v.

**Jacqueline C. RUPERT, Appellant.**

Superior Court of Pennsylvania.

Argued April 2, 2013.

Filed Nov. 7, 2013.

Reargument Denied Jan. 8, 2014.

Joshua A. Lyons, Pittsburgh, for appellant.

Jay D. Marinstein and James R. Schadel, Pittsburgh, for Dillon, McCandless, King, Coulter & Graham, LLP, appellee.

BEFORE: BOWES, DONOHUE, and MUNDY, JJ.

OPINION BY BOWES, J.:

Jacqueline C. Rupert ("Jacqueline") appeals from the September 25, 2012 order wherein a trial court in Butler County ordered that this Butler County action be coordinated with an action that Jacqueline filed in Allegheny County and ordered both actions to proceed in Butler County. We vacate the order and direct that the action filed in Court of Common Pleas of Allegheny County at GD 12–007664 proceed in that jurisdiction.

■ We first set forth the procedural posture of this matter. On November 16, 2011, Dillon McCandless King Coulter & Graham, LLP (the "law firm") and Thomas W. King, III, Esquire, an attorney who works for the law firm (collectively "Appellees"), received a letter from an Allegheny County attorney who represented Jacqueline. In the letter, Jacqueline's lawyer accused Appellees of committing malpractice in a personal injury action involving Jacqueline and her husband Michael T. Rupert. On January 6, 2012, Appellees instituted this action in declaratory judgment in Butler County. In their complaint, they alleged that, in the letter, Jacqueline's attorney indicated that she was going to seek to invalidate an agreement that she entered on November 4, 2010. That November 4, 2010 document was entitled a revised contingent fee agreement. In it, Appellees reduced their previously-entered contingent fee arrangement by

.333%, and Jacqueline agreed that any proceeds of the personal injury action received by Michael would be considered his separate property and that her consortium claim was worth the amount of the fee reduction, *i.e.*, .333% of any recovery in the personal injury action. In the present Butler County action, Appellees sought a declaration that the November 4, 2010 document was a valid, enforceable agreement.

On February 9, 2012, Jacqueline filed preliminary objections to the complaint. She alleged that there was no case or controversy in this litigation because she never took the position that the November 4, 2010 accord was invalid. She averred that the present declaratory judgment action was a sham designed to deprive her of her chosen forum in which to litigate her malpractice action against Appellees.

On February 28, 2012, Appellees filed an amended complaint reiterating the identical allegations as those contained in the first complaint and seeking the same relief. Michael was added as a plaintiff in the amended complaint. Jacqueline renewed her preliminary objections. On May 3, 2012, Jacqueline filed a legal malpractice action against Appellees in the Court of Common Pleas of Allegheny County at GD 12–007664. On May 11, 2012, Appellees filed a motion seeking coordination of this action pursuant to Pa.R.C.P. Rule 213.1 and a stay of the proceedings that were instituted in the Allegheny County Court of Common Pleas by Jacqueline. They attached a copy of the Allegheny County complaint to the motion for coordination.

The trial court first ruled upon the outstanding preliminary objections to the amended complaint. On May 15, 2012, the trial court entered a memorandum opinion and order that granted Jacqueline's preliminary objections filed to the first amended complaint. It premised that grant on the fact that the complaint failed to set forth that there was an actual controversy. In the May 15, 2012 order, the first amended complaint was dismissed, but Appellees were accorded the right to file a second amended complaint.

On May 27, 2012, Appellees filed their second amended complaint seeking a declaration as to the validity of documents executed by Jacqueline in connection with the personal injury case. The trial court in the present action then issued an order that stayed the Allegheny County proceedings. On August 13, 2012, Appellees filed an amended motion for coordination of action pursuant to Pa.R.C.P. 213.1. The parties filed briefs and argued their positions before the trial court on August 21, 2012. On September 25, 2012, the trial court entered an order granting coordination of the Allegheny County case with the present one:

> 1.) Coordination of the Butler County declaratory judgment action, at A.D. 12–10019, and the Allegheny County malpractice action, at G.D. 12–007664, is appropriate.
>
> 2.) Coordination of said actions to Butler County is appropriate.
>
> 3.) Pursuant to Pa.R.Civ.P. 213.1(d)(2), the lawsuit filed by Jacqueline C. Rupert in the Court of Common Pleas of Allegheny County, at G.D. 12–007664, is transferred to the Court of Common Pleas of Butler County.

Order of Court, 9/25/12. Jacqueline filed the present timely appeal from the September 25, 2011 order.

The pertinent facts, as contained in the documents of record, are as follows. On May 27, 2010, Michael was horrifically injured in an automobile accident. Immediately after the crash, Michael was in a coma, and, while Michael was incapacitated, Jacqueline retained Appellees to represent her and her husband to recover

damages caused by the traffic accident. Potential defendants included the driver who caused the accident, that driver's employer, and Ford Motor Company, which was the manufacturer of the vehicle that Michael was driving when he was injured. On June 1, 2010, Jacqueline, individually and as court-appointed representative of Michael, signed a contingent fee agreement with the law firm that accorded it the right to receive thirty-three and one-third percent of any recovery obtained with respect to the May 27, 2010 accident.

Mr. King thereafter began to engage in actions designed to recover damages for both parties. Appellees averred in this declaratory judgment case that Mr. King encouraged the Ruperts to decide the amount that Jacqueline should receive for loss of consortium. They further averred that the Ruperts decided that her loss of consortium should be valued at .333% of any recovery against all the potential defendants, and Appellees, in an act of altruism, agreed to reduce their fee by .333% to fund Jacqueline's recovery. Jacqueline's malpractice case against Appellees, as discussed *infra*, contains materially different allegations regarding the reason for the fee reduction.

On November 4, 2010, the Ruperts and Mr. King executed a revised contingent fee agreement wherein 1) the contingent fee to be received by Appellees was reduced to thirty percent; 2) Jacqueline agreed that her "Loss of Consortium Claim in the settlement, verdict, or recovery concerning both of the underlying cases will be Three and One–Third Percent (3–1/3%)"; 3) Michael was to be distributed 66.66% of amounts received from tortfeasors; and 4) "Jacqueline C. Rupert and Michael T. Rupert agree[d] that the funds generated as set forth herein shall be the sole and independent property of each of them … notwithstanding any prior agreement to the contrary, and that each of them may independently deal with and dispose of any such recovery as they respectively deem appropriate." Complaint, 1/6/12, at Exhibit B.

Thereafter, Mr. King drafted an irrevocable trust for Michael into which part of the proceeds of his personal injury claims were to be deposited. In the event of divorce, Jacqueline would receive none of the proceeds of the trust. The claims against the driver and employer were subsequently settled for $19 million. From that settlement, Jacqueline received $632,700 in payment for her loss of consortium.

On November 14, 2011, Jacqueline filed a divorce action against Michael. On November 16, 2011, Maurice A. Nernberg, Esquire, sent the aforementioned letter to Mr. King that delineated his accusations that Appellees engaged in malpractice and a conflict of interest when advising Jacqueline to enter the November 4, 2010 revised contingent fee agreement, wherein she assented to three and one-third percent of any recovery as the value of her consortium claim and waived her right to equitable distribution of the proceeds of her husband's personal injury claims. The letter read in its entirety:

I have been retained as counsel for Jacqueline Rupert ("Jacqueline") concerning the settlement of the action by Michael T. Rupert ("Michael") with "Brayman Construction Corporation, Steve Macon, Travelers Insurance Company and American Guarantee & Liability Insurance Company."

At the time of the settlement, from what I am told, Michael and his father, Timothy A. Rupert ("Timothy"), objected to Jacqueline receiving anything from the settlement for her claimed loss of consortium. They informed your firm that they would not agree to any settlement

if Jacqueline was to receive any part of the settlement. Your firm then informed Jacqueline that the firm would reduce its fee by 3 1/3% to 30% of the recovery, and she would be provided 3 1/3% of the settlement amount. She was informed that her consortium claim had little value.

At the time your firm learned that Michael and Jacqueline were on opposite sides of the table, it had a duty to inform her that she would have to obtain her own counsel. Your firm had an irreconcilable conflict of interest. Jacqueline was never advised of the conflict of interest or to engage her own attorney. Consequently, she was ill advised on the value of her claim, what rights she had or how to pursue those rights. It is our view that the loss of consortium claim was substantially more valuable than the small share of the settlement she received.

The foregoing was all made worse when your firm drafted the Michael T. Rupert Irrevocable Trust. That Trust provided Jacqueline with limited benefits and only if she were essentially an indentured servant to Michael. Also, your firm knew of the difficult relationship between Jacqueline and Timothy and his dislike of her. Thus, at the time of the settlement, your firm was aware not only that Michael and Timothy objected to Jacqueline getting anything, but also that they intended to move the settlement funds into an irrevocable trust that was intended to prevent her from ever receiving anything. That made it even more necessary for her to engage her own counsel.

It is Jacqueline's intent to file an action against your firm forthwith, unless there can either be a settlement or standstill agreement pending the outcome of domestic litigation between Jacqueline and Michael. I suggest you turn this letter over to your insurer at this time, or, if you have counsel, to that counsel.

*Id.* at Exhibit E.

In this declaratory judgment action, Appellees claimed that the letter suggested that Jacqueline was planning to seek to nullify the November 4, 2010 revised contingent fee arrangement and other documents, and they sought a determination that they were valid. Jacqueline's preliminary objections to this complaint and the ensuing one tracked each other. She maintained that the present action was a sham and that Appellees' intent in instituting it was to preemptively prevent Jacqueline from filing a legal malpractice action against them in Allegheny County. She averred that she never claimed that she would seek to invalidate the November 4, 2010 accord. Jacqueline continued that Appellees were not actually seeking a declaration of the validity of the agreement in question but were trying to avoid defending a malpractice case in a jurisdiction where they did not have the advantage of familiarity with the local judiciary.

In her preliminary objections, Jacqueline also alleged that, in their declaratory judgment complaint, Appellees misrepresented the contents of the letter sent by Mr. Nernberg. Jacqueline observed that, rather than indicating that she intended to void the November 4, 2010 document, the letter accused Appellees of malpractice in connection: 1) with its valuation of her loss of consortium; 2) their advice to Jacqueline in that respect; 3) engaging in a direct conflict of interest in representing her and her husband in connection with entry of the November 4, 2010 accord; 4) in failing to adequately advise her about the significant marital rights that she relinquished in that the contract allowed Michael to retain all of his recovery for his injuries. Jacqueline asserted that this declaratory judg-

ment action presented no case or controversy.

We now examine the averments contained in Jacqueline's malpractice action. When Jacqueline executed the first contingent fee arrangement with Appellees, an attorney-client relationship was created. Despite this fact, Mr. King began to include Michael's father Timothy Rupert in discussions about the personal injury case. Mr. King was aware that Timothy "vehemently disliked Jacqueline, was hostile to her and objected to her participating in the legal actions or recovery related to Michael's injuries." Allegheny County Complaint, 5/3/12, at ¶ 12. Despite the fact that his attorney-client relationship was confined to representation of Michael and Jacqueline, Mr. King started to share with Timothy the details of his attempts to recover money from the tortfeasors responsible for Michael's injuries. Timothy and/or Michael told Mr. King that Michael did not want Jacqueline to receive **any** of the proceeds of any claim against any tortfeasor. As a result of significant private communications with and directions from Timothy, Mr. King's advice to Jacqueline was improperly influenced to Jacqueline's detriment.

In the malpractice litigation, Jacqueline also raised these allegations. Prior to entry of the November 4, 2010 revised contingent fee agreement, Mr. King was aware that there was $21 million in available insurance coverage with respect to the negligent driver and his employer. Mr. King told Jacqueline that Michael and Timothy would not agree to settle the case if Jacqueline received any of the proceeds from settlement and that Jacqueline would receive no part of it. Mr. King failed to tell Jacqueline that her consortium claim was a separate claim that could be tried before a jury and that she was entitled to a specific award in that respect. He also neglected to advise Jacqueline that, by settling any claim, she would lose the right to have her consortium loss determined by a jury, despite the fact that those types of claims historically yielded significant awards in situations similar to the one at issue. After researching consortium awards, and while aware that Jacqueline had been consistently providing care for Michael, Mr. King informed Jacqueline that he had "learned through performing extensive research that a high average for loss of consortium claims was $100,000." *Id.* at ¶ 28. He also told her that her claim had "little to no value" and that Michael and Timothy would not share a potential settlement or verdict with her. *Id.* at ¶ 29. Mr. King then offered to reduce his contingent fee to thirty percent and give Jacqueline the .333% reduction to satisfy her consortium claim. Mr. King "represented to Jacqueline that 3 1/3% of the total settlement was better than she could obtain by trial or settlement without Michael's consent." *Id.* The reduction in the fee was designed to secure Jacqueline's assent to settle for the benefit of Appellees, which received a multi-million dollar fee.

In her Allegheny County action, Jacqueline averred, "Due to the adverse relationship between Jacqueline on the one hand and Timothy and Michael, on the other, with respect to Jacqueline receiving any funds from settlement, [Mr.] King had a conflict of interest as to both Jacqueline and Michael." *Id.* at ¶ 30. Even though the conflict was irreconcilable, Mr. King concealed it from Jacqueline and continued to advise and represent her "to the benefit of Michael and to [Jacqueline's] detriment." *Id.* at ¶ 31. Mr. King did not give her any advice as to the effect that the May 4, 2010 revised contingent fee agreement might have upon her ability to recover some of the verdict or settlement received by Michael, even though he was aware that the parties had entered an

antenuptial agreement. Mr. King incorrectly informed Jacqueline that if Michael refused to settle the case, she would be entitled to nothing should the matter proceed to trial.

Jacqueline further claimed in the malpractice lawsuit that Mr. King never advised her that the November 4, 2010 agreement would negate the inclusion of settlement money being paid to Michael as marital property, nor did Mr. King explain the import of the provision in the revised contingent fee arrangement according Michael the sole right to all the proceeds of any settlement or verdict in his favor. She maintained that these defaults constituted a breach of Mr. King's attorney-client duty to her and malpractice. Additionally, Mr. King's conflict of interest affected his advice to Jacqueline, which induced Jacqueline to accept an amount far below the value of her claim. When she executed the November 3, 2010 accord and settlement documents,

> Jacqueline relied upon the information provided to her by King, that (1) her loss of consortium claim was of a far lesser value than she would be receiving by signing the amendment and settlement documents, (2) that she would not receive anything if Michael did not want her to have anything and (3) that she had no rights other than as described by King, as set forth above.

*Id.* at ¶ 45.

Jacqueline's complaint against Appellees set forth counts in legal malpractice, breach of fiduciary duty, and conflict of interest. She also raised counts in gross negligence and intentional misconduct. At no point in the complaint did Jacqueline seek to negate or avoid the legal impact of any of the documents that she signed in connection with the personal injury action. Rather, her allegations solely concerned Mr. King's advice to and representation of her in connection with her execution of the documents.

With this procedural and factual background in mind, we address Jacqueline's appellate claims, which are as follows:

A. Did the Butler County Court have jurisdiction to decide a motion for coordination when a complaint was first filed in Allegheny County?

B. Does the Butler County Court's admitted refusal to consider the totality of the circumstances when deciding a motion for coordination constitute an abuse of discretion?

C. Did the Butler County Court abuse its discretion by coordinating two cases without an express finding that the two cases had significant and predominant common issues of fact or law?

Appellant's brief at 3.

■ Initially, we note that, "We review an order coordinating actions for abuse of discretion by the trial court." *Pennsylvania Manufacturers' Association Insurance Co. v. The Pennsylvania State University*, 63 A.3d 792, 794 (Pa.Super.2013). Pa.R.C.P. 213.1 provides (emphases added):

> (a) In actions pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions. Any party may file an answer to the motion and the court may hold a hearing.

> (b) The court in which the complaint was first filed may stay the proceedings in any action which is the subject of the motion.

Subsection (c) sets forth various factors, which the trial court is to consider in deciding whether coordination was proper.

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied.

Pa.R.C.P. 213.1(c).

We conclude that the September 25, 2012 order was improper on the second and third issues raised by Jacqueline. In connection with her second issue, Jacqueline avers that the trial court erred in failing to consider the following circumstances when it decided the coordination issue. The complaint instituting the instant declaratory judgment case presented allegations that Jacqueline was attempting to negate the revised contingent fee agreement that she signed. This representation was premised upon the November 16, 2011 letter from Jacqueline's attorney while he did not take that position in the letter. Thus, when instituting this action, Appellees sought a declaration when there was no case or controversy respecting the validity of the agreement that was the original subject of this declaratory judgment action. Hence, this lawsuit was filed on a false premise.

Our careful review of the contents of the letter that was the genesis of this action reveals that Jacqueline correctly charac-terizes the contents of the letter that her attorney sent to Appellees. The lawsuit filed in Allegheny County likewise did not attempt to invalidate any of the pertinent documents drafted by Appellees and signed by Jacqueline. Rather, Jacqueline's allegations consistently related to Appellees' improper conduct in obtaining her signature on those instruments.

Appellant relies upon *VMB Enterprises, Inc. v. Beroc, Inc.*, 891 A.2d 749 (Pa.Super.2006), which we agree applies herein. In *VMB Enterprises, Inc.*, the defendant appealed from an order granting the plaintiffs' motion to coordinate their Lycoming County action with an action that the defendant had filed against the plaintiffs in Luzerne County. The two matters related to a contract between the defendant and the plaintiffs wherein the defendant sold the plaintiffs used bakery equipment. The defendant's place of business was in Luzerne County whereas the plaintiffs' place of business was in Lycoming County.

After the sale, a dispute arose, and the plaintiffs informed the defendant that they would not pay an outstanding balance due under the contract. A mere two weeks before conveying this information to the defendant, the plaintiffs filed a lawsuit in Lycoming County. In that action, the plaintiffs claimed that they did not owe money to the defendant due to the defendant's receipt of items of personalty from them. The plaintiffs subsequently acknowledged that those allegations were false, and then agreed to file an amended complaint.

Four days after plaintiffs agreed to file the amended complaint, the defendant filed an action in Luzerne County. That litigation raised a breach of contract claim due to plaintiffs' default in payment for the equipment that they purchased. Thereafter, the plaintiffs filed an amended complaint in the Lycoming County action, rais-

ing a different theory of liability in that the plaintiffs averred that the equipment that they bought was not in the condition warranted by the defendant. The plaintiffs in Lycoming County then moved for coordination, which was granted.

We held that the first complaint filed by plaintiffs in Lycoming County was a nullity because it was based on statements that were subsequently proven to be false. Specifically, we stated: "In the instant case, we conclude that the first complaint that Appellees' filed in Lycoming County was a nullity. First, it was based on statements that one of [the plaintiffs] admitted to be patently false. These were not minor mistakes or oversights, but instead were fabrications without which the first complaint would be devoid of any claim for breach of contract." *Id.* at 752. Since that complaint was void and the amended complaint set forth a new cause of action, we concluded that the complaint filed by the defendant in Luzerne County should have been considered the first complaint filed and that the motion for coordination could only be granted by the Luzerne County Court of Common Pleas. We reversed the coordination order entered by the Lycoming County court.

Similarly, herein, the present declaratory judgment action was filed on an entirely false premise. A declaration was sought concerning the validity of an accord that Jacqueline never claimed was void. Rather, Jacqueline accused Appellees of misconduct in connection with obtaining her assent to the contract. This action was instituted based upon fabricated allegations, which were not oversights or minor mistakes but which formed the complete underpinning for the lawsuit. The present litigation was nothing more than a ploy designed to deprive Jacqueline of the benefit of her chosen forum in which to litigate her malpractice case. Consistent with the reasoning contained in *VMB Enterprises, Inc.*, we hold that the complaints filed herein are nullities for purposes of a coordination order.

■ We also agree with Jacqueline's final position that the trial court abused its discretion in analyzing the subsection (c) factors in determining whether coordination was proper. First, the trial court erred in concluding that there were "common questions of fact and law" that "predominate in both the Butler County and Allegheny County cases." Trial Court Opinion, 9/25/12, at 4. As to the declaratory judgment action, Jacqueline conceded that the agreements, and, in particular, the November 4, 2010 accord, were valid. In the Allegheny County case, the issues concern Mr. King's actions in connection with obtaining her signature on the documents in light of his conflict of interest, malpractice, misrepresentations, and gross negligence. The validity of the November 4, 2010 agreement is unrelated to the question of whether Mr. King is liable to Jacqueline for his actions in connection with obtaining her assent to it. Thus, contrary to the trial court's conclusion, there is not a "common question of fact or law" that "is predominating and significant to the litigation[.]" Pa.R.C.P. 213.1(c)(1).

The second factor to be considered is the convenience of the parties, witnesses and counsel. Butler and Allegheny County are contiguous, and Appellees have offices in Pittsburgh. The trial court focused a good deal of attention on Michael's condition, which makes it difficult for him to travel. However, Michael is only a witness, not a party. He can be deposed in Butler County, and he would need to travel to Allegheny County only if there is a trial. The convenience of one witness cannot take precedence over the fact that litigating this matter in Allegheny County will not inconvenience the parties.

Jacqueline would be prejudiced if the action proceeds in Butler County because Allegheny County is her chosen venue. There is no danger of duplicative judgments because the issues are not related. One involves whether the agreements, especially the revised contingent fee arrangement, are valid. The other issue is whether the Appellees committed malpractice and other improper conduct in inducing Jacqueline to execute the documents in question. Judicial resources will be used either in Allegheny County or Butler County. The other 213.1(c) factors are not implicated herein.

For all of the foregoing reasons, we vacate the order in question, vacate the stay entered with respect to the action filed in Court of Common Pleas of Allegheny County at GD 12–007664, and order that Jacqueline Rupert be permitted to proceed with her litigation filed at that docket number. Appellees are free to pursue coördination in the Court of Common Pleas of Allegheny County.

Order vacated. Case remanded. Jurisdiction relinquished.