J-A04045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID E. KISSLING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EMMA SINGH, ROBERT SINGH, AND HEALTHCARE EVOLUTION, LLC | |
| Appellants | No. 1203 MDA 2017 |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Berks County
Civil Division at No(s): 15-13855

BEFORE:  STABILE, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 03, 2018**

Appellants, Emma Singh, Robert Singh, and Healthcare Evolution, LLC ("Healthcare Evolution"), appeal from the trial court's order entered July 11, 2017, granting the motion of Appellee David E. Kissling to coordinate two actions in Berks County and Montgomery County.  We affirm.

We adopt the following procedural history from the trial court opinion, which in turn is supported by the record.  **See** Trial Court Opinion (TCO), 9/20/17, at 1-5.  We further note that, as this matter has not yet preceded to trial, the facts are confined to allegations in the respective complaints. Appellants Robert Singh, a medical doctor, and Emma Singh, a medical doctor and pharmacist, founded Healthcare Evolution, a home infusion, drug compounding, medical supply, and pharmacy business.  Appellee David

_____

* Retired Senior Judge Assigned to the Superior Court.

Kissling was involved in the marketing and sale of medical services and devices. Although Appellants and Appellee worked together for a time, their business relationship soon soured. The reasons for this falling out are represented very differently by the parties in two separate actions.

In June 2015, Appellee filed a complaint in Berks County against the Singhs and Healthcare Evolution, asserting claims for breach of contract, unjust enrichment, violation of the Wage Payment and Collection Law ("WPCL"), and fraudulent concealment. He alleged that he had orally contracted with Appellants to provide sales and marketing services to Healthcare Evolution in exchange for a one-third ownership interest in the LLC if and when revenue doubled. Due to a client referral resulting in a three million dollar increase in revenue, Appellee averred he was to become a 1/3 owner with a $12,500.00 per month salary. Nevertheless, in April 2015, Appellants informed Appellee they were terminating the agreement and that Appellee would not receive an ownership interest or salary.

In May 2017, Appellants filed a complaint in Montgomery County against Appellee, Professional Pharmacy & Convalescent Products, LTD, and two additional defendants. The complaint raised claims for tortious interference with current and prospective economic advantage, unfair competition, aiding and abetting tortious conduct, and fraud. Essentially, Appellants claimed that at the time he was hired, Appellee grossly misrepresented his work experience and contacts. Appellants contend that as a result of these misrepresentations,

- 2 -

they ended their affiliation with him. Appellee then allegedly used Healthcare Evolution's confidential information to poach customers.

Appellee filed a motion in Berks County seeking to coordinate the two actions, which the court granted. The Montgomery County action was to be transferred to and consolidated with the Berks County action.

Appellants timely appealed[1] and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellants raise the following questions for our review:

1. Whether the Montgomery County action and the Berks County action (collectively hereafter the "Actions") should be consolidated in Berks County, pursuant to Rule 213.1, Pa.R.Civ.P.

    A. Whether, pursuant to Rule 213.1, the two actions have common questions of fact at issue.

    B. Whether, pursuant to Rule 213.1, the common questions of fact at issue in the two actions are also significant and predominating in both actions.

    C. Whether consideration of the other factors set within Rule 213.1 favor coordination of the actions in Berks County.

Appellants' Brief at 4 (unnecessary capitalization and answers omitted).

Appellants argue that the court erred in coordinating the two actions. **See** Appellants' Brief at 23. Essentially, Appellants argue the court should

---

[1] While an order transferring venue is interlocutory, it is appealable as of right. **See Pa. Mfrs.' Ass'n. Ins. Co. v. Pa. State Univ.**, 63 A.3d 792, 793 n.1 (Pa. Super. 2013); **see also** Pa.R.A.P. 311(c).

have engaged in a two-step analysis, *i.e.*, first determining whether the actions constituted common questions of fact or law, before considering the other factors outlined in Pa.R.C.P. 213.1. *Id.* Additionally, Appellants claim that the actions do not concern common questions, as the Berks County action concerns the terms of and performance under an alleged oral agreement, and the facts in the Montgomery County action pertain to Appellee's alleged use of confidential business information. *Id.* Appellants claim the business relationship between Appellants and Appellee is not an issue of fact significant and predominant to both actions. *Id.*

We review an order coordinating actions for abuse of discretion by the trial court, and

> [w]here the record provides a sufficient basis to justify the order of coordination, no abuse of discretion exists. Whether we would have reached the same conclusion is immaterial. In exercising its discretion, the trial court should receive guidance not only from the enumerated [Rule 213.1(c) ] criteria . . . but also from the explanatory comment to Rule 213.1(c), which explains that the ultimate determination that the court must make is whether coordination is "a fair and efficient method of adjudicating the controversy."

*Pa. Mfrs.' Ass'n Ins. Co.*, 63 A.3d at 794–95 (internal citations and quotations omitted).

Pa.R.C.P. 213.1 provides, in relevant part:

(c) In determining whether to order coordination and which location is appropriate for the coordinated proceedings, the court shall consider, among other matters:

> (1) whether the common question of fact or law is predominating and significant to the litigation;

- 4 -

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied.

*See* Pa.R.C.P. 213.1(c).

In matters of coordination, and particularly in determining whether the common question of fact or law is predominating and significant to the litigation, the case law is unfortunately sparse and light on analysis.

In *Wohlsen/Crow v. Pettinato Associated Contractors & Eng'rs, Inc.*, 666 A.2d 701, 702 (Pa. Super. 1995), two actions were filed in a matter that was at its heart a breach of contract case. *Id.* The first was an action in equity to prevent the plaintiff from terminating a subcontract, and the second was an action in assumpsit filed by the defendant in the primary case. *Id.* Neither party challenged whether there was a common question of law or fact; instead, the issue was whether the venue was properly in Schuylkill County. *Id.*

In **Pa. Mfrs.' Ass'n Ins. Co.**, an insurance company filed a declaratory judgment action in Philadelphia County seeking a declaration that its obligation to defend and indemnify the Pennsylvania State University was more limited than Penn State had claimed. **Pa. Mfrs.' Ass'n Ins. Co.**, 63 A.3d at 793. Penn State filed a countersuit for breach of contract and bad faith in Centre County. **Id.** at 794. The trial court coordinated the actions in Philadelphia County. **Id.** Here, there was again no dispute that there was a common question of law and fact, as the two cases were related through the central question of the scope of insurance coverage and whether the insurance company had a duty to defend, or had breached its contract. **Id.** at 795. Again, the sole dispute was the county in which the action should be coordinated. **Id.**

**Washington v. FedEx Ground Package Sys., Inc.**, 995 A.2d 1271, 1273 (Pa. Super. 2010), involved a multi-district class action lawsuit to determine whether appellants, drivers for FedEx, were properly classified as independent contractors or employees. **Id.** Several drivers filed individual actions in Philadelphia County, asserting similar claims against FedEx. **Id.** at 1273-74. Again, neither party challenged whether there were common questions of law and fact – there clearly were – but the dispute centered around whether the actions were properly coordinated in the class action's district. **Id.**

In **Trumbauer v. Godshall**, 686 A.2d 1335, 1335-56 (Pa. Super. 1997), the court consolidated two cases in which the plaintiff had been initially

treated at a hospital in Philadelphia County and later underwent surgery at a hospital in Bucks County. *Id.* After suing both hospitals, the actions were properly consolidated in Philadelphia, as the second surgery was necessitated by deficiencies in the first treatment. *Id.* There was, again, no dispute as to whether there were common questions of law and fact, the parties were instead arguing over whether discovery was necessary to determine whether consolidation would inconvenience the parties. *Id.* at 1336.

By contrast, in ***Dillon McCandless King Coulter & Graham, LLP v. Rupert***, 81 A.3d 912, 920 (Pa. Super. 2013), the coordination of a declaratory judgment action with a legal malpractice action was improper because there were not common questions of law or fact predominating in both actions. *Id.* The validity of an agreement in the declaratory judgment action was unrelated to whether an attorney was liable for his actions in connection with obtaining the plaintiff's assent to the agreement. *Id.*

Here, the trial court noted:

There is substantial commonality in the factual questions raised by the two actions. Appellants characterize the two actions as distinct largely because the facts at issue cover separate time periods; they argue the Berks action deals with the formation and conduct of the business relationship, while the Montgomery action deals with [Appellee's] behavior after the relationship ended. But the two complaints plainly both include allegations covering the formation of the business relationship between [Appellee] and Healthcare Evolution and the conduct of that relationship. The allegations are at odds but address exactly the same topics over the same period of time: the nature of [Appellee's] experience in marketing medical products and services, [Appellee's] use of Healthcare Evolution office space and business cards, [Appellee's] hiring of an administrative assistant, and [Appellee's] success or

- 7 -

> failure in establishing new contacts, lines of business, and revenue. Appellants' assertion that the Montgomery action deals only with actions taken after the affiliation ended is particularly disingenuous in light of the fraud claim. The only misrepresentations identified under Count IV of the Montgomery complaint, the fraud count, are [Appellee's] representations about his experience "[p]rior to affiliating with Healthcare Evolution," his representations about his marketing efforts "[w]hile affiliated with Healthcare Evolution," and his representations about his intentions "[w]hile affiliated with Healthcare Evolution." . . . These facts all precede the end of the business relationship and are involved in both actions.

*See* TCO at 6-7. The court also noted that Appellee's breach of contract claim might fail if he did not keep up his end of the bargain by creating new revenue. *Id.* Essentially, the common question was "whether [Appellee] was an experienced medical marketer who performed well for Healthcare Evolution or an inexperienced individual who failed to generate business for the company." *Id.* Thus, the court concluded that there were common questions of fact and that these common questions were predominating and significant.

Additionally, the court concluded that 1) the proceedings have already been going for nearly two years and it would be wasteful for a new court to get up to speed; 2) substantial discovery has already been undertaken and coordinating discovery efforts should benefit all parties; 3) Berks and Montgomery Counties are close enough that there is no location-based detriment to the parties; 4) the only delay is to Appellants' right to appeal but that right exists in every instance of an application to coordinate actions. *See* TCO at 7-8.

As these findings are supported by the record, we decline to find that the court abused its discretion in coordinating these actions and particularly in coordinating them in Berks County. ***See Pa. Mfrs.' Ass'n Ins. Co.***, 63 A.3d at 794–95.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2018